IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRADLEY ROBERT LAMB,

     Plaintiff,

v.                                CASE NO. 5:11-cv-85-RS-GRJ

RICK SCOTT, et al,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate presently incarcerated at Apalachee Correctional Institution West (ACI), initiated this case by filing a complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and paying the filing fee.  Plaintiff contends that the conditions of confinement at ACI violate his rights under the Eighth Amendment.  He asserts that he is a "successor member" of the plaintiff class in *Costello v. Wainwright*, 489 F. Supp. 1100 (M.D. Fla. 1980), a prison overcrowding class action case, and that he is entitled to seek enforcement of the settlement agreement in that case by way of the instant § 1983 complaint.  Plaintiff names as Defendants Governor Rick Scott and Florida Department of Corrections Secretary Edwin Buss.  Upon careful consideration of Plaintiff's Complaint, it is recommended that this case be dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted.

## Plaintiff's Allegations

Plaintiff contends that "overcrowding problems exist in various housing units" at ACI, and that the "food budget is insufficient to properly feed the overcrowded inmate population."  He alleges that as a result of these conditions he suffers "continuing

harm." More specifically, he contends that while he was housed in K Dorm at ACI-East, there were only three toilets for 90 men, in violation of health department rules, and that beds were too crowded. He alleges that he "was subject to close confines with 89 other inmates," and that "tensions abound" in such circumstances. He states that many inmates in that dorm take psychotropic drugs, and that "[o]vercrowding is contrary to a healing environment."

Plaintiff alleges that while he was housed in B2 Dorm at ACI-West, the dorm was "too crowded, at times 100% full," and that rules require that 5% of the beds remain open for population management. Such conditions subjected him to "close confines and tensions from overcrowding." In November 2010 he was moved from West Unit to East Unit with 30 other inmates "for a bed shift needed when there were not enough open beds," and that the four-week transfer disrupted his mental health treatment, and he missed enrollment in a mental health class. He further contends that he was "exposed" to another inmate who had a staph infection, and that the close confines created "anxiety" and caused poor health and sanitary conditions.

Plaintiff contends that while he was housed in D Dorm at ACI-West, there was insufficient space around each bunk, and bunks were as close as six inches apart. He alleges that he "was harmed by close confines and exposure to violence, *i.e.* two arguments over a bed shift of two to six inches."

With regard to prison food service, Plaintiff alleges that due to inadequate funding the inmates receive "insufficient fruit and fiber," and that serving sizes of fruit and vegetables are smaller than required under "nationally cited nutritional standards." He complains of a pattern of "food production errors and shortages" that require the

Warden to "alter the served menu," and that he is "harmed by a variable menu already deficient in servings of fruits and vegetables. Plaintiff has to seek fiber supplements by medical treatments."

For relief, Plaintiff seeks an order requiring review of "all DOC institutions" for compliance with space and sanitation standards, establishment of "a new master menu with sufficient fruit and fiber," properly-funded food services, and an "exact census" of DOC facilities' populations.

## Standard of Review

Pursuant to 28 U.S.C. § 1915A, the court shall review 'a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer," and "shall identify any cognizable claims or dismiss the complaint . . . if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."[1]

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal, pursuant to 28 U.S.C. § 1915A. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and

---

[1]Plaintiff's complaint is subject to screening notwithstanding that he paid the full filing fee and is not proceeding as a pauper.

complaint "must contain something more . . . than . . . a statement of facts that merely

creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, ___ U.S.

___, 129 S.Ct. 1937, 1951-53 (2009) (*Twombly* "expounded the pleading standard for

all civil actions," and conclusory allegations that "amount to nothing more than a

formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be

assumed true," and, to escape dismissal, complaint must allege facts sufficient to move

claims "across the line from conceivable to plausible.").

A *pro se* litigant's allegations are entitled to the benefit of liberal construction.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, a court does not have "license .

. . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an

action."  *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th

Cir.1998)(*overruled on other grounds* by *Iqbal).*

Claims challenging conditions of confinement under the Eighth Amendment must

demonstrate either the infliction of pain "without any penological purpose" or an

"unquestioned and serious deprivation of basic human needs."  *Rhodes v. Chapman*,

452 U.S. 337, 347 (1981).  Overcrowding in and of itself is not an Eighth Amendment

violation unless it results in the deprivation of basic human needs.  *Id*. at 347-48.

Eighth Amendment claims are evaluated under a two-part analysis comprised of an

objective and a subjective component.  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11

Cir.2004).  Under the objective component, a prisoner must prove that the condition he

complains of is sufficiently serious to violate the Eighth Amendment.  *Hudson v.

McMillian*, 503 U.S. 1, 8 (1992).  The challenged condition must be "extreme."  *Id*. at 9.

While an inmate "need not await a tragic event" before seeking relief, he must at the

very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). Moreover, the Eighth Amendment "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* at 36.

Under the subjective component, the prisoner must show that the defendants "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson,* 503 U.S. at 8 (internal quotation and citation omitted). The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

## Discussion

To the extent that Plaintiff alleges that the settlement agreement in *Costello* creates an independent cause of action, such allegation fails to state a claim upon which relief may be granted. Remedial orders of a federal court do not create rights enforceable under the Constitution or laws of the United States. *See Green v. McKaskle*, 788 F.2d 1116 (5th Cir.1986); *Cagle v. Sutherland*, 334 F.3d 980, 986-87 (11th Cir. 2003) (a violation of a consent decree, standing alone, does not establish a

violation of a plaintiff's constitutional rights of a kind actionable under § 1983).  Thus, to survive dismissal of his § 1983 complaint at the screening stage, Plaintiff must sufficiently allege that his conditions of confinement violate the Eighth Amendment, and not merely that conditions do not conform with aspects of a prior settlement agreement.

Even liberally construed, Plaintiff's allegations concerning overcrowding and variations in food service at ACI do not suggest deprivations of the type that objectively amount to Eighth Amendment violations.  Conditions that create "close confines" and produce "tension" might be uncomfortable and even unpleasant, but the conditions as alleged by Plaintiff are not inhumane and do not amount to any serious deprivation of a basic human need.  *See Rhodes*, 452 U.S. at 349 ("the Constitution does not mandate comfortable prisons.").  Plaintiff alleges that one dorm had insufficient toilet facilities, that he was "exposed" to another inmate with a staph infection, and that the close confines resulted in "two arguments" over bed space, but these facts do not suggest that his conditions of confinement present an unreasonable risk of serious damage to his health or safety, nor do the facts suggest that conditions at ACI violate contemporary standards of decency.

Plaintiff also contends that his Eighth Amendment rights have been violated with regard to the food service at ACI, which he alleges offers insufficient portions of fruits and vegetables, and which he complains operates under a pattern of  "food production errors and shortages" and a "variable menu."  He asserts that he has been harmed because he must take fiber supplements.  A review of the grievances attached to Plaintiff's complaint reflects that he has complained about menu substitutions such as being served rice instead of the potatoes that were specified on the menu, sliced bread

being substituted for cornbread, and cookies being substituted for applesauce. The Court notes that Plaintiff's grievances requesting additional fruit were granted.

The Eighth Amendment requires jails to provide inmates with meals that contain sufficient nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977). Plaintiff's allegation that the servings of fruits and vegetables do not conform to a "nationally cited nutritional standard," does not amount to an Eighth Amendment violation, nor do his complaints regarding menu variations and substitutions. *See*, *e.g., LeMaire v. Maass*, 12 F.3d 1444, (9th Cir.1993) (food served by a jail need not be tasty, aesthetically pleasing, or hot, but merely needs to maintain adequate health); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985) (Constitution only requires that prisoners be provided with "reasonably adequate food" of "sufficient nutritional value to preserve health."). The fact that Plaintiff takes a fiber supplement does not suggest that the food served at ACI fails to meet minimum constitutional standards.

## Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Complaint, Doc. 1, be **DISMISSED** pursuant to 28 U.S.C § 1915A for failure to state a claim upon which relief may be granted..

**IN CHAMBERS** this 8th day of April 2011.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**